STATE of Tennessee, Petitioner,

v.

Tony Mack BROWN, Respondent.

Supreme Court of Tennessee.

June 20, 1977.

Brooks McLemore, Atty. Gen., Jack E. Seaman, Asst. Atty. Gen., Nashville, Carroll Van Deacon, Asst. Dist. Atty. Gen., Cleveland, for petitioner.

Charles M. Corn, Cleveland, for respondent.

## OPINION

HENRY, Justice.

Respondent was convicted in the Criminal Court at Cleveland of burglary and assault and battery. His convictions were reversed by the Court of Criminal Appeals, and we granted the State's petition for certiorari.

### I.

Our primary reason for granting certiorari was to examine the correctness of the conclusion reached by the Court of Criminal Appeals in holding that medical and hospital records of the prosecutrix while a patient at a state hospital were discoverable.

Prior to the trial the defendant made a motion which reads in part as follows:

Defendant further alleges that the State's witness, Margie McCarver has suffered a mental illness and has been a patient at Moccasin Bend Psychiatric Hospital in Hamilton County, Tennessee, and that said Hospital is a State institution and is under the management and control of the Commissioner of Mental Health pursuant to 33 T.C.A. 201. Defendant alleges that his attorney should be furnished with a medical report from said Hospital concerning the nature of Margie McCarver's mental illness. That the mental condition of said witness directly relates to her credibility as a witness and the medical report may therefore be exculpatory in nature.

Attached to this motion was a letter from defendant's counsel to Moccasin Bend Hospital requesting a medical report concerning the victim's mental condition "especially with respect to whether she has any delusions or hallucinations concerning sexual assaults." Also attached is the response of Moccasin Bend's Superintendent declining to release the information absent "a signed release of information form by the individual patient." This motion was renewed, in writing, one day prior to trial.[1]

Upon the argument of the motion, counsel for the defendant represented to the court, from information gleaned from the preliminary hearing, that the victim had "some form of mental disability or instability", "had been in Moccasin Bend Hospital two or three times, once for a period of five to six months', and further stated his belief that "there is probably something in that report that she has illusions of people attacking her or persecuting her."

He further stated:

. . . I think that if the court had or if I had a chance to look at this that I would be able to develop a cross-examination to the point where I could seriously impeach her credibility. Now, if the court felt that this was too serious a violation of her rights as a mental patient *it would be all right with me if the court got the report and if the court read it and the court make a decision as to whether I should be able to read it or not.*[2] (Emphasis supplied).

The record shows that the victim had been a patient at Central State Hospital for approximately a year in 1970 and 1971. The report from Central State shows that she has been treated repeatedly for emotional disturbances of psychotic proportions. It further shows that she has been a patient at Moccasin Bend since her treatment at Central State.

### II.

The first issue to be addressed is whether these reports are privileged.

The State insists that Sec. 24–112, T.C.A. "makes communication between a patient and a psychiatrist privileged except in three specific instances, none of which were present in the instant case." Sec. 24–112, T.C.A. reads as follows:

*Communications between psychiatrist and patient.*—Communications between a patient and a person licensed to practice

---

1. Identical motions were made in each case. In the interest of clarity and brevity we treat them in the singular.

2. This is the precise approach taken by the Court of Criminal Appeals, i. e., an *in camera* inspection to determine the probative value of the records.

medicine while acting in the capacity of a psychiatrist shall be privileged communications except in civil and criminal cases and other legal proceedings in which (1) the mental condition of the patient is an issue or (2) it is determined by the court or board having jurisdiction of the matter that the interests of justice require that the privilege be withheld or (3) in those hearings or proceedings under chapter 14 of title 52 of this Code relative to the civil commitment of persons not charged with or convicted of any criminal offense.

■ We respectfully disagree with the State's insistence that these exceptions are not applicable. Clearly, the mental condition of this prosecuting victim was an issue. It is even more clear that the interests of justice required that the privilege be withheld.

The mental condition of this prosecuting victim was an issue of overriding importance. If the hospital records compiled at Moccasin Bend would have established that she did, in point of fact, suffer from hallucinations or delusions, this information would have been critical.

While we have before us no assignment that would permit an evaluation of the evidence, we feel that a proper consideration of the confidentiality of the medical records and their discoverability demands that we note several significant facts about the testimony.

*First,* the conviction rests solely upon the testimony of the victim and that of her 12 year old grandson.

*Second,* according to the victim's description of the struggle with the defendant, both as given at the hearing, and as related by her to others, she "bit him real hard" on the hand. She repeatedly described the nature and extent of the bite. Yet, all the proof is that, when arrested immediately after the alleged crime, he did not have a mark upon his hand.

*Third,* the victim and her 12 year old grandson testified that he and his 10 year old brother shot the defendant repeatedly with a BB gun, striking him in various places, including his face. And yet, the uncontroverted proof is that when arrested he did not have a mark about his face.

*Fourth,* there was a strong alibi defense.

*Fifth,* the jury reported "hung" and did not reach a verdict until after the court gave a supplemental charge.

Fundamental considerations of justice, under these circumstances, demand the denial of the privilege and the discoverability of those records. As Judge Daughtrey stated in the opinion of the Court of Criminal Appeals, with respect to the psychiatric reports, "[t]heir impeachment value in this case can best be described as *powerful.*" (Emphasis supplied).

We hold that the reception of these records and reports was not precluded by Sec. 24–112, T.C.A.

### III.

We now discuss the discovery aspects of this case.

When the motion for discovery was presented, the trial judge had a number of options.

■ *First,* while the motion was not based specifically upon Sec. 40–2044, T.C.A., the trial judge could have treated the report sought as a paper or document "under the control of the attorney for the state." This logically follows from the fact that the District Attorney General represents "the State" and Moccasin Bend is a "State" mental health facility. Sec. 33–201, T.C.A. "The duty to disclose is that of the state . . . ." not just that of the office of the prosecutor. *Barbee v. Warden, Maryland Pen.,* 311 F.2d 842, 846 (4th Cir. 1964).

■ *Second,* he could have entered an order requiring and directing that the Superintendent at Moccasin Bend lodge the requested documents with the Clerk of the Court.

*Third,* he could have directed the issuance of a subpoena *duces tecum* directing the Superintendent at Moccasin Bend to appear at a designated time and place and to bring with him the requested documents.

*Fourth,* he could have required that the prosecutrix execute a release of information form as a condition precedent to the receipt of her testimony.

In connection with these alternatives we note with approval the following section from the American Bar Association Standards Relating to Discovery and Procedure Before Trial:

2.4 *Material held by other governmental personnel.*

Upon defense counsel's request and designation of material or information which would be discoverable if in the possession or control of the prosecuting attorney and which is in the possession or control of other governmental personnel, the prosecuting attorney shall use diligent good faith efforts to cause such material to be made available to defense counsel; and if the prosecuting attorney's efforts are unsuccessful and such material or other governmental personnel are subject to the jurisdiction of the court, the court shall issue suitable subpoenas or orders to cause such material to be made available to defense counsel.

The State of Tennessee administers criminal justice through its courts. The most significant figure in this process is the trial judge, who possesses vast power—statutory and inherent—in the administration of justice. He has an affirmative duty to insure that both the State and those who stand accused not be denied access to critical information essential to the fact finding process.

In *State v. Gaddis,* 530 S.W.2d 64 (Tenn. 1975), this Court said:

We note an emerging trend toward broad and reciprocal discovery in criminal cases. The days of trial by ambush are numbered. Rapidly fading is what Dean Pound described as the "sporting theory of justice". 530 S.W.2d at 69.

■ The Court of Criminal Appeals, in this case, merely followed the rationale and reasoning of *Gaddis, supra,* i. e. full and reciprocal discovery to the maximum extent possible consistent with the constitutional rights of those accused of criminal acts.

We think that this full discovery demands that upon request of a defendant the State shall permit the defendant to inspect and copy or photograph any results or reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof, which are within the possession, custody or control of the State, the existence of which is known, or by the exercise of due diligence may become known, to the district attorney general and which are material to the preparation of the defense or are intended for use by the State as evidence in chief at the trial.

■ The Court of Criminal Appeals correctly held that the requested information was discoverable under Sec. 40–2044, T.C.A. which reads as follows:

*Copying certain books, papers and documents held by attorney for state.*—Upon motion of a defendant, or his attorney, at any time after the finding of an indictment or presentment, the court shall order the attorney for the state, or any law enforcement officer, to permit the attorney for the defendant to inspect and copy or photograph designated books, papers, documents or tangible objects, obtained from or belonging to the defendant or obtained from others which are in possession of, or under the control of the attorney for the state or any law enforcement officer. The order may specify a reasonable time, place and manner of making the inspection, and of taking the copies or photographs and may prescribe such terms and conditions as are just. However, such inspection, copying or photographing shall not apply to any work product of any law enforcement officer or attorney for the state or his agent or to any oral or written statement given to any such officer or attorney for the state or his agent by any witness other than the defendant.

IV.

■ The Court of Criminal Appeals, in reversing the trial judge, and remanding the case, directed that on retrial

. . . the trial court should order an *in camera* inspection of the requested records to determine whether they have any probative value to the defendant in the preparation of his defense and the trial of this case.

We approve these instructions. The trial judge, in his sound judicial discretion, must be the arbiter of the probative value—either as direct evidence or as a source of cross-examination—of the findings contained in the report of Moccasin Bend.

In view of the disposition we make, it is unnecessary that we pass upon the remaining assignments.

Affirmed.

COOPER, C. J., and FONES, BROCK and HARBISON, JJ., concur.