**STATE of Tennessee, Appellee,**

v.

**Eddie Bill KELLY, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

May 7, 1985.

Permission to Appeal Denied by Supreme Court Aug. 12, 1985.

W.J. Michael Cody, Atty. Gen., Wayne E. Uhl, Asst. Atty. Gen., Nashville, Charles E. Hawk, Dist. Atty. Gen., Kingston, Roger Delp, Asst. Dist. Atty. Gen., Loudon, for appellee.

Harold D. Balcom, Jr., Gary L. Mc-Donald, Kingston, for appellant.

## OPINION

WALKER, Presiding Judge.

Convicted of first degree murder and sentenced to life imprisonment, the defendant, Eddie Bill Kelly, appeals to this court, contending that the trial judge erred by overruling his motion to suppress autopsy results, in denying two pretrial discovery motions, and that the evidence is insufficient to sustain the verdict. We find no reversible error and affirm the judgment.

In the early morning hours of July 14, 1983, the defendant and a friend, Charles Langford, arrived at the home of Carl Hackworth in Harriman where the defendant saw the truck belonging to his brother, Bennie L. Kelly. Bennie Kelly and his girl friend, Kimberly Gail Elkins, had gone to bed in the Hackworth home and had been asleep an hour or more. Before this incident the defendant had told Ms. Elkins that Bennie Kelly was on his hit list and that he did not have a brother.

On this occasion the defendant produced a .38 caliber pistol, shouted obscenities at his brother, fired once through the ceiling and broke down the door to the bedroom where his brother and Ms. Elkins were sleeping. He ordered his brother to turn on the light and indicated that he was going to get even with Bennie Kelly for shooting him or shooting over him about two years before. The defendant then fired three more times, one shot striking Bennie Kelly in the right eye, fatally wounding him.

When Ms. Elkins wanted to call an ambulance, the defendant put his pistol in her face, told her not to move and that this man (Bennie Kelly) had shot him one time before. The defendant told Hackworth that he had killed his brother; that the only thing he was sorry for was that it had happened in Hackworth's house.

The defendant did not testify in his own behalf. Both his witnesses and the state's witnesses show that he and Langford had been drinking the afternoon and evening

before the killing. On cross-examination Hackworth testified that the defendant was angry with his brother about money and that he argued about it in the bedroom.

By his first issue, the defendant insists that the results of the autopsy should have been suppressed because it violated his right against unreasonable searches and seizures under the Fourth Amendment to the United States Constitution. He relies on irregularities in the statutory procedure of recommending the autopsy, as well as the fact that he was not notified of the autopsy as next of kin.

The defendant contends that three of the officials who participated in the process of examining the body and recommending the autopsy, two deputy coroners and an acting county medical examiner, were unauthorized to fill those positions. He cites T.C.A. 8-9-105; 38-7-104; 38-7-106; and 38-7-108.

At the hearing on the motion to suppress the autopsy results, the defendant showed that the Roane County Medical Examiner had resigned effective January 31, 1979, and the county commission had not elected another at the time of this killing. He also showed that there was no private act creating the office of deputy coroner for the county.

After the resignation of the county medical examiner, there was a practice in Roane County that the physician on duty at the hospital emergency room would sign necessary papers as acting medical examiner.

The county had a coroner, Clyde Houston, who appointed several deputy coroners to assist him. On this morning the coroner was called at about 1:30 a.m., and he sent Deputy Coroner Roberts to the scene of the killing. Deputy Coroner Roberts there filled out necessary papers and generally performed the duties of coroner. The body was taken to the hospital where a form recommendation and order of autopsy was signed by Deputy Coroner Ray Gullett and Doctor Dwight H. Willett, the physician on duty at the emergency room who signed as county medical examiner. The district attorney general then ordered the autopsy

and also signed a notification form to next of kin, Loretta Duncan, a sister of the deceased. The body was then taken to Maryville for the autopsy.

■ Although T.C.A. 8-9-105(b) provides that the office of deputy coroner may be created by private act, this provision does not prevent a coroner from appointing a deputy in the absence of a private act.

■ Similarly, there was nothing illegal about the physician on duty at the emergency room acting as medical examiner while that office stood vacant. When he signed the recommendation form, he was at least acting as a de facto officer, and any technical problem with his right to hold office had no effect on the validity of his acts. *Ridout v. State*, 161 Tenn. 248, 30 S.W.2d 255 (1930); 67 C.J.S. Officers, §§ 264 et seq. (1978). All parties appear to have acted in the good faith belief that Dr. Willett could act as medical examiner. His recommendation with that of the deputy coroner was sufficient for the district attorney general to authorize the autopsy.

■ We find no violation under T.C.A. 38-7-106 of the district attorney general in notifying the next of kin of the impending autopsy. Although he notified a sister alone and not the defendant or his other brothers, we find no violation of the defendant's rights. The statute did not require the defendant's consent or authorization.

■ Further, the defendant has shown no legitimate expectation of privacy for him in the body of the deceased upon which the officers intruded. He has cited no case or statute which legally confers upon him any right to the possession of his brother's body. He has shown no standing to challenge the "search" or "seizure" of the victim's body. If the defendant expected that he could prevent the state from examining the body of one who has recently died by violence, his expectation was neither reasonable nor legitimate. We note that he makes no claim that the autopsy was unreliable. This issue is meritless.

In his second issue, the defendant argues that the court erred in refusing discovery on an *in camera* inspection of the police officers' personnel files.

In the pretrial hearing the defendant explained that in the officers' personnel files there might be psychiatric and physical reports that might have some bearing on their credibility as witnesses. He sought an *in camera* inspection of those records.

We examined a similar question in *State v. Butts*, 640 S.W.2d 37 (Tenn.Cr.App.1982). Considering our policy of broad and reciprocal discovery reflected in Tennessee Rules of Criminal Procedure, Rule 16, and in *State v. Brown*, 552 S.W.2d 383 (Tenn. 1977), and case law from other jurisdictions, in *Butts*, we adopted the rule:

> "Criminal defendants may not routinely have access to police personnel records, but upon a strong showing that the personnel records might contain information material to a defendant's case, the trial court should conduct an *in camera* inspection of the records and release to defendant those items the court deems material to the defense."

We concluded that Butts had failed to make a strong enough showing to allow the disclosure of the records. Similarly, Eddie Kelly here failed to make any showing of materiality in support of his request for access to the officers' personnel files. In the record here the officers testified to simple observations of the scene of the crime; the mental condition of the officers was not of overriding importance as it was in *Brown*. 552 S.W.2d at 385. This issue is overruled.

In his second motion for discovery, the defendant sought various records of the sheriff's department, such as arrest reports, complaint cards, vehicle logs, dispatcher logs, recordings of radio transmissions, offense reports, jailor reports and state jail inspector's report of the Roane County jail. In the pretrial hearing, counsel explained that he had attempted to obtain these under the public record statute,

T.C.A. 10–7–501, et seq., but had been unable to do so. The state had refused to supply the requested information on the grounds of immateriality. The trial court held that the items were not discoverable unless the state intended to use them at trial, in which event he would exclude them there. The trial court also pointed out that counsel could subpoena the custodians of the documents.

The defendant at the pretrial hearing insisted and on appeal insists that as a member of the general public he had a right under the public record statute to discovery of the records (production by the state). He made no showing that the requested documents would be material to his defense.

In the context of the criminal prosecution, the defendant's only remedy was Tenn.R.Crim.P. 16(a)(1)(C) which requires a showing of materiality. See *State v. Butts*, supra. Rule 16 does not authorize such discovery. The trial judge properly denied it.

In his final issue, the defendant argues that he was too intoxicated to form the specific intent required to commit first degree murder, and that the homicide was the result of "heated passion" rather than premeditation and deliberation. Under both theories he argues that he was guilty of no greater offense than second degree murder.

Although the defendant had been drinking at the time, the jury was justified in concluding from the evidence that he was not too intoxicated to have formed a deliberate and premeditated design to kill his brother. This was a question of fact for the jury, which may base its conclusion on circumstantial evidence. *State v. Adkins*, 653 S.W.2d 708 (Tenn. 1983); *State v. Givens*, 631 S.W.2d 720 (Tenn.Cr.App.1982); *State v. Voltz*, 626 S.W.2d 291 (Tenn.Cr.App.1981); *State v. Bullington*, 532 S.W.2d 556 (Tenn.1976). The determinative question is not whether the defendant was intoxicated, but what

was his mental capacity. *Harrell v. State,* 593 S.W.2d 664, 672 (Tenn.Cr.App.1979).

In spite of his intoxication the defendant drove his car to the site, saw his brother's truck and knew that he would find him on Hackworth's premises. He talked intelligently to his friends and deliberately pulled out his pistol. By his witnesses he said that he would go to the bedroom and shoot over his brother's head to show him how it feels. When he came to the bedroom, his statements indicated that he intended to shoot his brother. His statements and conduct after the killing support the jury's finding of deliberation and premeditation. The defendant had threatened his brother before this encounter, and the jury was also warranted in finding the elements of first degree murder rather than a killing in the heat of passion.

Any rational finder of fact could have found guilt of first degree murder beyond a reasonable doubt. T.R.A.P. 13(e).

The judgment is affirmed.

BYERS, J., and TEMPLETON, Special Judge, concur.