**Jackie Ray FOSTER, Appellant,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee,
at Nashville.
Permission to Appeal Denied by
Supreme Court March 3, 1997.

June 11, 1996.

Thomas T. Overton, Nashville, for appellant.

Charles W. Burson, Attorney General & Reporter, Ellen H. Pollack, Asst. Attorney General, Victor S. Johnson, III, District Attorney General, John P. Seaborg, Asst. District Attorney General, Nashville, for appellee.

## *OPINION*

PEAY, Judge.

The petitioner was indicted for thirty counts of aggravated rape and fourteen counts of aggravated sexual battery. He pled guilty to and was convicted of two counts of aggravated rape and two counts of aggravated sexual battery. He was sentenced as a Range I, standard offender to twenty-five years for each of the aggravated rape convictions, and twelve years for each of the aggravated sexual battery cases, all sentences to run concurrently for an effective sentence of twenty-five years. This was the sentence recommended by the State.

The petitioner filed for post-conviction relief, alleging numerous grounds. After an evidentiary hearing, the lower court denied relief. The petitioner now appeals on a single ground, alleging that the State violated *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and that his guilty plea was therefore uninformed. We affirm the holding of the lower court.

1. It is the policy of this Court to use the initials rather than the names of minor victims of sex

The petitioner was indicted for numerous instances of sexually molesting his minor stepdaughter, W.A.[1] The victim had alleged that the sex offenses occurred over a four year period, beginning when she was approximately six years old. Detective Paul Hyde of the Metro Police Department Youth Services Division investigated the case. He testified that he had sent the case file to the district attorney and that he had prepared the case synopsis which became the front page of this case file. This synopsis includes the notation, "There is a tape I have in my possession that was given to me by Darlene Foster, victim's mother, that supposedly consists of a conversation between victim and victim's mother concerning victim's disclosure of abuse. I have not listened to the tape." Detective Hyde testified that he could not recall whether he had ever listened to the tape at any time after preparing the synopsis. He further testified that, although he had looked for it, he had been unable to find the tape. Assistant District Attorney Bailey, to whom the case file was sent, testified that he had no recollection of either having received the tape, or of listening to it. He further testified that, based on the remainder of his investigation into the case, he had no reason to believe the tape was exculpatory.

Prior to the petitioner entering his guilty plea, the State responded to the petitioner's discovery request. The State's response included the statement, "In accordance with the decision in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), all items of exculpatory nature, if any there be, will be furnished to defense counsel if and when any such item or information becomes known to the State." The petitioner's counsel did not learn about the existence of the tape recording prior to the defendant's guilty plea.

After the petitioner filed his petition for post-conviction relief, the State provided his attorney with access to its "blue file." Apparently, the petitioner's post-conviction lawyer discovered the existence of the tape at

offenses.

the time he reviewed the State's file. The petitioner now alleges that this tape may have included exculpatory evidence which was not turned over to him in violation of *Brady v. Maryland,* and that he is therefore entitled to have his guilty plea set aside and be tried. He contends that if he had known about the existence of the tape at the time of his plea, he would not have pled guilty. The petitioner admitted at the hearing on this matter, however, that he does not know what is on the tape. Nor did the petitioner call the victim's mother to testify about what was on the tape.

■■■ Under *Brady v. Maryland,* the prosecution must furnish the accused with any material exculpatory evidence that pertains to the guilt or innocence of the accused, or the punishment which may be imposed upon conviction. 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Exculpatory evidence includes evidence which the accused may use to impeach. *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). "[A] violation of the requirements found in *Brady* ... is a due process violation." *State v. Davis,* 823 S.W.2d 217 (Tenn.Crim.App.1991).

■ The precise issue in this case, however, is whether the State violated *Brady* if it failed to review the tape and make a determination about whether it contained any material exculpatory evidence. There appears to be no reported decision from a Tennessee appellate court addressing this particular issue. Several federal circuit courts of appeal have, and have concluded that "the prosecution's *Brady* obligations include not only a duty to disclose exculpatory information, but also a duty to search possible sources for such information." *U.S. v. Brooks,* 966 F.2d 1500, 1502 (D.C.Cir.1992). *See also, U.S. v. Perdomo,* 929 F.2d 967 (3rd Cir.1991); *Carey v. Duckworth,* 738 F.2d 875 (7th Cir.1984); and *U.S. v. Auten,* 632 F.2d 478 (5th Cir. 1980). We think this is the correct rule. Importantly, however, this duty is limited to examining "non-trivial prospect[s]" of material exculpatory information. *Brooks,* 966 F.2d at 1504.

■ In this case, the court below denied the petitioner's petition, finding that the "evidence we've got before us about the contents of the tape is not consistent with anything exculpatory. Officer Hyde's note about it says that it consists of a conversation between the victim and the victim's mother concerning the victim's disclosure of abuse. That tells me the mother got the child to tell about it and taped it. Now, I've got nothing here—I've got no—even threshold predicate for belief that—that this tape is an exculpatory piece of material."

■ "In post-conviction relief proceedings the petitioner has the burden of proving the allegations in his [or her] petition by a preponderance of the evidence." *McBee v. State,* 655 S.W.2d 191, 195 (Tenn.Crim.App. 1983). Furthermore, the factual findings of the trial court in hearings "are conclusive on appeal unless the evidence preponderates against the judgment." *State v. Buford,* 666 S.W.2d 473, 475 (Tenn.Crim.App.1983).

The petitioner has made no showing that the information contained on the tape was in any way exculpatory. Based on the lower court's findings, the prospect of this piece of evidence containing any material exculpatory information must be deemed "trivial." Moreover, we find it incredible that the petitioner contends that he would not have pled guilty had he merely known about the very existence of the tape, irrespective of what may have been recorded.[2]

As the evidence does not preponderate against the lower court's findings, we affirm its denial of the petitioner's claim for relief.

JONES, P.J., and HAYES, J., concur.

---

**2.** Of course, if the tape contained no exculpatory evidence, the State would have been under no obligation to inform the defendant about its very existence.