IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

AUGUST 1998 SESSION

FILED

January 8, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | NO. 03C01-9708-CC-00367 |
| Appellee, | ) | |
| | ) | ANDERSON COUNTY |
| VS. | ) | |
| | ) | HON. JAMES B. SCOTT, JR., |
| JEFFREY R. ALLEN and | ) | JUDGE |
| JENNINGS MICHAEL COEN, | ) | |
| | ) | |
| Appellants. | ) | (Attempted Rape) |

FOR THE APPELLANTS:

CHRISTOPHER VAN RIPER
(Attorney for Appellant Allen)
300 Market Street, Suite 200
Clinton, TN 37716

NANCY MEYER
(Attorney for Appellant Coen)
Asst. District Public Defender
101 S. Main St., Suite 450
Clinton, TN 37716

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

MICHAEL J. FAHEY, II
Assistant Attorney General
Cordell Hull Building, 2nd Floor
425 Fifth Avenue North
Nashville, TN 37243-0493

JAMES N. RAMSEY
District Attorney General

JAN HICKS
Assistant District Attorney General
127 Anderson County Courthouse
Clinton, TN 37716

OPINION FILED: _____

REVERSED AND REMANDED

JOE G. RILEY,
JUDGE

**OPINION**

The defendants, Jeffrey R. Allen and Jennings Michael Coen, appeal as of right their convictions of attempted rape by an Anderson County jury. Allen was sentenced to ten (10) years as a Range III, persistent offender. Coen was sentenced to four (4) years as a Range I, standard offender. On appeal, the appellants raise the following issues for review:

> (1) whether the proof adduced at trial was sufficient to sustain the attempted rape convictions;
>
> (2) whether the defendants were denied exculpatory evidence;
>
> (3) whether the trial court erred in denying a new trial based on newly discovered evidence;
>
> (4) whether the trial court properly instructed the jury on the lesser offense of attempted rape;
>
> (5) whether the trial court erred instructing the jury as to the release eligibility date for Allen;
>
> (6) whether Allen was properly classified as a persistent offender; and
>
> (7) whether facsimiles of certified judgments were properly admitted in Allen's sentencing hearing.

Upon an extensive review of the record, we REVERSE the judgment of the trial court and REMAND for a new trial.

**I.**

The victim lived in a duplex apartment. Her neighbor, Jerry Wilcox, invited co-workers from a local restaurant to his apartment for a party on August 23, 1994. One of the defendants, Jennings Michael "Mike" Coen, was a co-worker of Wilcox and attended the party with his friend Jeffrey Allen, the other defendant. The victim arrived at the party at approximately 1:00 a.m.

The party was noisy, and neighbors called the police several times to

2

complain. After several visits by officers, the party ended. Everyone left the apartment except for Wilcox, the victim, and a friend of Wilcox's, Brian Fisher. Wilcox and Fisher decided to buy more beer. They left the victim alone in the apartment. As he was leaving, Wilcox noticed the defendants standing by Coen's car.

According to the victim, the defendants then re-entered the apartment and accosted the victim. They forced her into Wilcox's bedroom, and while Allen held her down, Coen removed her shorts and underwear. The victim informed the defendants that she was menstruating, and Coen responded by pulling out the victim's tampon and throwing it across the room. Allen placed his hand over the victim's mouth in order to quiet her cries for help. The victim testified she bit Allen's hand in an attempt to free herself. The victim further testified that both of the defendants attempted to force her to perform oral sex, and that both penetrated her vagina and anus with their fingers.

When Wilcox returned, he noticed the door to his bedroom was closed. Initially thinking the defendants and the victim were engaged in a voluntary sexual encounter, Wilcox did nothing. However, shortly thereafter, Wilcox heard the victim scream. He forced open the door to his bedroom and found Allen sitting on the floor, holding his hand over the victim's mouth. Coen, who had been blocking the door, stated to Wilcox, "We're going to teach the whore a lesson."

Wilcox retreated to the kitchen to enlist the aid of Fisher. Wilcox returned to the bedroom with Fisher, again having to force it open. Wilcox told the defendants to leave, which they did. On their way out, the defendants instructed Wilcox to remain quiet about the incident.

A neighbor had heard the earlier screaming and called the police. Shortly

3

after the defendants left, police officers arrived at the apartment.

The medical evidence offered by the state established the presence of bruising on the victim's inner thigh. The bruising was probably caused within two (2) days of the examination. The medical examination did not reveal any evidence of trauma to the vagina or anus.

The defense presented the testimony of Coen and several other persons present at Wilcox's apartment. Tressa Vowell and Aaron House testified that the alleged victim was "very drunk" and "very flirtatious" that night. They described her as wearing "short shorts" and a "tank top" that exposed her breasts. The witnesses testified that the alleged victim was "flirting with, touching, whispering things" to males in the apartment. Vowell further testified that she saw bruises on the victim's arms and inner thighs that night prior to the alleged sexual attack. Both Vowell and House testified they remained outside the apartment until Wilcox returned and heard nothing unusual from inside. Bronson Woods, another party attendee, testified essentially the same as Vowell and House.

Defendant Coen testified that after everyone else left the apartment, the victim waved him into Wilcox's bedroom where she was kissing Allen. The victim advised Coen she had a tampon. When Coen removed it, the victim began to scream that she was being raped. Coen stated he and Allen panicked, and Allen covered the victim's mouth. Allen was trapped under the victim at this time. It was at this time that Wilcox entered the room.

The jury was charged as to the indicted offense of aggravated rape and the lesser offenses of attempted aggravated rape, rape, attempted rape and assault. A guilty verdict was returned for attempted rape.

**II.**

4

The defendants initially challenge the sufficiency of the evidence. They contend no rational trier of fact could have found them guilty of attempted rape as there was no evidence presented at trial that they were cooperating in an unlawful attempt to penetrate the victim.

In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). A jury verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). On appeal, the state is entitled to the strongest legitimate view of the evidence and all legitimate or reasonable inferences which may be drawn therefrom. Id. This Court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the defendant demonstrates that the facts contained in the record and the inferences which may be drawn therefrom are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt. State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996). Accordingly, it is the appellate court's duty to affirm the conviction if the evidence, viewed under these standards, was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 317, 99 S.Ct. 2781, 2789, 61 L. Ed.2d 560 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994).

In order to convict the defendants of attempted rape, the state was required to prove that the defendants acted with an intent to commit rape and committed a substantial step towards the unlawful sexual penetration of the victim through the use of force. Tenn. Code Ann. §§ 39-12-101(a)(3); 39-13-503(a)(1). Whether a defendant has committed a "substantial step" depends on the circumstances surrounding the offense. *See* State v. Reeves, 916 S.W.2d

5

909, 912 (Tenn. 1996).

In a light most favorable to the state, the evidence showed the defendants held the victim down, stripped her from the waist down, and then removed her tampon. According to the victim, both attempted to force her to perform oral sex. This testimony was sufficient to support the conviction for attempted rape as to both defendants. There was also testimony from the victim that the defendants penetrated her vaginally and anally. It is no defense to a prosecution for criminal attempt that the offense attempted was actually committed. Tenn. Code Ann. § 39-12-101(c).

Although the testimony presented by the defense was inconsistent with an attempted rape, it was for the jury to determine the credibility of the witnesses. In a light most favorable to the state, the evidence was sufficient to support the convictions.

This issue is without merit.

## III.

### A.

The defendants' second issue relates to their pre-trial motion for the disclosure of any exculpatory information contained in records of the victim's treatment in mental health institutions. The records were subpoenaed by the trial court. The trial court placed the records under seal, reviewed them *in camera*, and found they could contain exculpatory information. The trial court asked the prosecuting attorney to review the records in detail for exculpatory evidence since the trial court did not have sufficient knowledge of the facts to make a proper determination of relevancy.

6

The prosecuting attorney did not comply with the trial court's request, subsequently citing her concern for the victim's privacy. Defense counsel continued to request exculpatory evidence in these records at subsequent hearings. The prosecuting attorney never examined them. As a result, the records remained under seal and were never made available to defense counsel.

**B.**

Records of patients in mental health facilities are to be kept confidential, subject to certain exceptions. Tenn. Code Ann. § 33-3-104(10)(A)(Supp. 1998). One exception allows a court to order disclosure where the failure to make disclosure would be contrary to public interest or detrimental to either party to the proceedings. Tenn. Code Ann. § 33-3-104(10)(A)(iv)(Supp. 1998). Due process requires the disclosure of any exculpatory evidence that might be contained in such records. *See* Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

Before an accused is entitled to relief for the state's failure to reveal evidence, the accused must establish several prerequisites: (a) the prosecution must have suppressed the evidence; (b) the evidence suppressed must have been favorable to the accused; and (c) the evidence must have been material. *See* United States v. Bagley, 473 U.S. 667, 674-75, 105 S. Ct. 3375, 3379-80, 87 L. Ed. 2d 481, 489 (1985); Brady v. Maryland, 373 U.S. at 87, 83 S.Ct. at 1196-97; State v. Edgin, 902 S.W.2d 387, 390 (Tenn. 1995). Evidence is considered material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the results of the proceeding would have been different. Kyles v. Whitley, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995); State v. Edgin, 902 S.W.2d at 390.

**C.**

7

We have examined the records under seal and conclude they contain exculpatory evidence of an impeaching nature that is favorable to the defendants. *See* United States v. Bagley, 473 U.S. at 674, 105 S.Ct. at 3379, 87 L.Ed.2d at 489. The medical and psychological history of the victim was relevant to the defense raised by the defendants. The facts of this case as well as the nature of the records are very similar to those in State v. Brown, 552 S.W.2d 383 (Tenn. 1977). Just as in Brown, the defendants were entitled to see the records.

Some of the medical records were subpoenaed from private sources. However, one source, Lakeshore Mental Health Institute, is a state facility. *See* Tenn. Code Ann. §§ 4-3-1603(a); 33-2-101(a)(1). Records from this agency contain exculpatory information. Ordinarily, the trial court has the obligation to examine the records of private agencies. *See* State v. Fox, 733 S.W.2d 116, 118 (Tenn. Crim. App. 1987). However, the District Attorney General represents the state and Lakeshore is a state agency. Brown, 552 S.W.2d at 385. Thus, the state had a responsibility to examine those records for any exculpatory evidence upon being requested by the trial court to do so. Id.; *see also* Foster v. State, 942 S.W.2d 548, 550 (Tenn. Crim. App. 1996).

For the above reason, this Court need not address the issue of whether the trial court had the authority to request that the District Attorney General's office review the records of private institutions for exculpatory evidence once they were subpoenaed and were within the jurisdiction of the court. Regardless, the trial court could properly request the District Attorney General's office to review the records of the state institution for exculpatory information.

A "hear no evil, see no evil" attitude is inconsistent with prosecutorial responsibilities. As the United States Supreme Court noted in Kyles v. Whitley,

> . . . a prosecutor anxious about tacking too close to

8

the wind will disclose a favorable piece of evidence. *See* Agurs, 427 U.S. at 108, 96 S.Ct. 2392, 49 L.Ed.2d 342 ("[T]he prudent prosecutor will resolve doubtful questions in favor of disclosure"). This is as it should be. Such disclosure will serve to justify trust in the prosecutor as "the representative . . . of a sovereignty . . . whose interest . . . in a criminal prosecution is not that it shall win a case, but that justice shall be done." Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed.2d 1314 (1935). And it will tend to preserve the criminal trial, as distinct from the prosecutor's private deliberations, as the chosen forum for ascertaining the truth about criminal accusations. *See* Rose v. Clark, 478 U.S. 570, 577-78, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986); Estes v. Texas, 381 U.S. 532, 540, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); United States v. Leon, 468 U.S. 897, 900-901, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)(recognizing general goal of establishing "procedures under which criminal defendants are 'acquitted or convicted on the basis of all the evidence which exposes the truth'"(quoting Alderman v. United States, 394 U.S. 165, 175, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969)). The prudence of a careful prosecutor should not therefore be discouraged.

514 U.S. at 439-440, 115 S.Ct. at 1568-1569, 131 L.Ed.2d at 509.

At the very least the District Attorney General's office should have examined the Lakeshore records and revealed exculpatory evidence. Likewise, the trial court should have revealed to defense counsel the Lakeshore and other records subpoenaed as their impeaching character was evident. The defendants were in a "catch-22." The defendants did everything possible to secure this exculpatory evidence but were unsuccessful.

### D.

Although the evidence was sufficient to support the convictions when viewed in a light most favorable to the state, we note the case primarily turned on the credibility of the victim. The medical evidence was inconclusive. According to the testimony, the bruising could have been caused up to two (2) days before the examination. Furthermore, there was no medical evidence of trauma to the vagina or anus. The jury was charged as to aggravated rape, the elements of

9

which were established by the testimony of the victim. The jury was also charged as to the lesser offenses of attempted aggravated rape, rape, attempted rape, and assault. Yet, the jury rejected the first three charges and found the defendants guilty of attempted rape.

We conclude the reports withheld from the defendants were material. Admittedly, we do not know if the jury would have reached a different result with the additional evidence. However, the defendants have shown a reasonable probability that, had this evidence been disclosed, the results of their trial would have been different. *See* Kyles v. Whitley, 514 U.S. at 419; 115 S.Ct. at 1566, 131 L.Ed.2d at 518; State v. Edgin, 902 S.W.2d at 390.

The trial judge predicted before the trial that these records might contain exculpatory evidence which could lead to a reversal of a conviction. The trial judge was correct. The defendants were deprived of evidence material to their defense. Accordingly, we must reverse and remand for a new trial on the charge of attempted rape. All records currently under seal shall be disclosed to the defendants.

## IV.

In their next issue, the defendants contend the trial court erred in failing to grant a new trial based on newly discovered evidence. We agree.

Following the trial of this case, but before the hearing on the motion for new trial, the victim appeared in court for a preliminary hearing on a DUI charge. At that hearing, the victim's attorney stated to the court that the victim has had "no less than six specific diagnoses of a mental health nature," to include psychotic behavior. At the hearing on the motion for new trial, defendants argued this newly discovered evidence warranted a new trial. The trial court

10

disagreed, stating:

> But basically I understand what you are saying to me
> as it relates to this victim, who comes in here with a
> mental profile. As to whether or not that victim's
> mental profile should be made available so you could
> cross-examine her about maybe any delusions or
> hallucinations or any other reports or anything like
> that. I don't believe it was available in her file - those
> things are under seal. The court of appeals can look
> at them.

The issues of failure to divulge exculpatory evidence and newly discovered evidence are intertwined. The newly discovered evidence is a part of the same exculpatory evidence sought by the defendants pre-trial. The newly discovered evidence relating to the psychiatric and mental health history of the victim was contained in the records under seal.

In seeking a new trial based on newly discovered evidence, there must be a showing that defendant and his counsel exercised reasonable diligence in attempting to discover the evidence, and that neither the defendant nor his counsel had knowledge of the alleged newly discovered evidence prior to trial. State v. Nichols, 877 S.W.2d 722, 737 (Tenn. 1994); State v. Singleton, 853 S.W.2d 490, 496 (Tenn. 1993). In addition, there must also be a showing of the materiality of the testimony, and the trial court must determine whether the result of the trial would likely be changed if the evidence were produced. Nichols, 877 S.W.2d at 737; Singleton, 853 S.W.2d at 496. The granting or refusal of a new trial on the basis of newly discovered evidence rests within the sound discretion of the trial court. State v. Walker, 910 S.W.2d 381, 395 (Tenn. 1995); State v. Parchman, 973 S.W.2d 607, 610 (Tenn. Crim. App. 1987).

Again, we find the defendants are entitled to a new trial. The defendants exercised reasonable diligence in seeking this information, but it was denied them. The case must be remanded for a new trial.

## V.

In their fourth issue, the defendants contend the trial court erred in charging the jury, *sua sponte*, on the lesser offenses of attempt to commit aggravated rape and attempt to commit rape.

A trial judge has a mandatory duty to charge a lesser included offense, whether requested or not, if the facts so justify. Tenn. Code Ann. § 40-18-110(a); State v. Jones, 889 S.W.2d 225, 230 (Tenn. Crim. App. 1994). A defendant can be convicted of "an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein if the attempt is an offense." Tenn. R. Crim. P. 31(c); State v. Dale Nolan, C.C.A. No. 01C01-9511-CC-00387, Sequatchie County (Tenn. Crim. App. filed as corrected July 23, 1997, at Nashville).

The attack upon charging attempted aggravated rape is without merit since the defendants were not convicted of that offense; thus, they could not have been prejudiced.

As to attempted rape, we first note that rape is a proper lesser included offense of the indicted charge of aggravated rape. Thus, pursuant to Tenn. R. Crim. P. 31(c), attempted rape may be charged if there is evidence to support a conviction. We have previously determined the evidence was sufficient to support the guilty verdict for attempted rape. Thus, attempted rape was properly charged to the jury.

This issue is without merit.

## VI.

The last three issues presented for review are raised only by the defendant, Jeffrey Allen.  First, the defendant alleges the trial court erroneously instructed the jury as to range of punishment and minimum release eligibility dates.  Second, the defendant contends the trial court improperly sentenced him as a Range III, persistent offender.  Third, the defendant claims the trial court erred allowing the state to present facsimiles of certified judgments as proof of his persistent offender status.  Although the issues are pretermitted by our remand for a new trial, we will address them in the event of an appeal to the Tennessee Supreme Court.

## A.

Defendant Allen complains the trial court erroneously instructed the jury as to the range of punishment and minimum release eligibility dates.  The trial court instructed the jury as follows:

> 1.  Aggravated rape.  A penitentiary sentence in the penitentiary for fifteen to twenty-five years, and a fine may be imposed not to exceed $50,000.
>
> 2.  Attempt to commit aggravated rape.  A penitentiary sentence of eight to twelve years, and a fine may be imposed up to $25,000.
>
> 3.  Rape.  A penitentiary sentence of eight to twelve years, and a fine may be imposed up to $25,000.
>
> 4.  Criminal attempt to commit rape.  A penitentiary sentence of three to six years, and a fine may be imposed up to $10,000.
>
> 5.  Assault, Part A.  A jail sentence may be imposed on Assault, Part A, of eleven months and twenty-nine days, and a fine may be imposed up to $2,500.
>
> 6.  Assault, Part B. A jail sentence may be imposed of up to six months, and a fine may be imposed not to exceed $500.
>
> You are further informed that the minimum number of years a person sentenced to imprisonment for these offenses . . . must serve before reaching the earliest release eligibility date is:
>
> 1.  Aggravated rape: 4.5 years.

2. Criminal attempt to commit aggravated rape: 2.4 years.

3. Rape: 2.4 years.

4. Criminal attempt to commit rape: 2.4 years.

5. Assault, Part A: Up to seventy-five percent of eleven months and twenty-nine days in jail, or two hundred, seventy-three days in jail.

6. Part B. Up to seventy-five percent of one hundred, eighty days, or one hundred, thirty-five days in jail.

### 1. Range of Punishment

Defendant Allen was convicted of attempted rape. The trial court's instruction regarding the range of punishment for that crime was three (3) to six (6) years in the penitentiary with a fine up to $10,000. The defendant was actually facing a much greater sentence as the prosecution had filed a notice to seek enhanced punishment as a persistent offender based upon Allen's prior felony convictions. *See* Tenn. Code Ann. § 40-35-202. Allen was eventually found to be a persistent offender, a status which raised the range of possible punishment to not less than ten (10) years up to fifteen (15) years. Tenn. Code Ann. § 40-35-112(c)(3).

The Tennessee Supreme Court has held that whatever rights or benefits the legislature intended for criminal defendants when it passed Tenn. Code Ann. § 40-35-201(b)(repealed 1998), would be lost if the defendant were sentenced to a punishment greater than what the jury finding guilt was instructed would be imposed. State v. Cook, 816 S.W.2d 322, 327 (Tenn. 1991). The Court held that to deny a defendant this statutory right constitutes prejudice, rendering the error reversible.

Thus, the trial court should have instructed the jury that the range of punishment was three (3) to fifteen (15) years.

14

## 2. Release Eligibility Date

Similarly, defendant Allen complains the trial court erred in instructing the jury that the minimum release eligibility date for attempted rape is 2.4 years. Actually, attempted rape is a Class C felony with a minimum release eligibility date of 0.9 years less other authorized credits.

Regardless of the trial court's error, we find Allen suffered no prejudice in this regard. Allen was convicted of and sentenced to the lowest felony offered to the jury. The jury was correctly instructed as to the proper misdemeanor sentences and rejected them. As the defendant faced a possible release date earlier than the jury was instructed, we find that he is unable to show prejudice as a result of the instruction. Tenn. R. App. P. 36(b).

## B.

Defendant Allen further contends the trial court erred in classifying him as a Range III, persistent offender. Specifically, he contends the trial court improperly based his persistent offender status on a Giles County theft charge which was adjudicated after the instant offense was committed.

The defendant is correct, and the state concedes, that the trial court could not use his subsequent Giles County conviction to categorize him as a persistent offender. A "prior conviction" refers to a conviction that has been adjudicated prior to the commission of the offense for which the sentence is to be imposed. Tenn. Code Ann. § 40-35-107(b)(1); State v. Blouvett, 904 S.W.2d 111, 113 (Tenn. 1995).

It is clear the prosecutor intended that the subsequent conviction only be considered for enhancement purposes under Tenn. Code Ann. § 40-35-114.

15

Use of the conviction for that purpose would be entirely proper. This Court has previously held that a sentencing court can consider criminal convictions or any other criminal behavior which occurred prior to the sentencing hearing as constituting a previous history of criminal convictions or criminal behavior, regardless of whether the convictions or behavior occurred before or after the criminal conduct under consideration. State v. Burl Jarrett, C.C.A. No. 02C01-9710-CC-00418, Hardeman County (Tenn. Crim. App. filed August 21, 1998, at Jackson); State v. Chad Douglas Poole, C.C.A. No. 02C01-9506-CC-00178, Hardeman County (Tenn. Crim. App. filed January 31, 1996, at Jackson), *affirmed on other grounds*, 945 S.W.2d 93 (Tenn. 1997).

Firstly, we are unable to definitely determine from the record whether the trial court applied the Giles County conviction to establish the persistent offender status. Although it appeared the trial court was adopting the state's argument, the trial court at one point stated "it's not required in the class 3 that this offense actually have been committed prior to conviction."

Secondly, although defendant had seven other prior felony convictions, three of these were committed on the same date and two others were likewise committed on the same date. The state was required to prove five or more prior felony convictions; however, felonies committed as part of a single course of conduct within twenty-four hours constitute one conviction unless they involve bodily injury or threatened bodily injury. Tenn. Code Ann. § 40-35-107(a)(1), (b)(4). All prior offenses were property crimes; thus, the state did not establish five prior felonies. The state did establish four prior felonies, qualifying defendant as a Range II, multiple offender.

Should defendant be convicted upon retrial, the defendant can be sentenced as a Range III, persistent offender, only if the state properly establishes the prior convictions in accordance with the dictates of Tenn. Code

16

Ann. § 40-35-107.

## C.

Defendant Allen's third sentencing issue is whether the trial court improperly admitted unverified facsimile copies of his prior convictions. The convictions were also included in the pre-sentence report prepared by the probation officer.

Where summary information about the qualifying convictions was contained in the presentence report but was not otherwise proven by certified copies of conviction records or otherwise, we have held that the state has proven range enhancement beyond a reasonable doubt, "'absent a showing that the report is based on unreliable sources or is otherwise inaccurate.'" State v. Anthony D. Hines, C.C.A. No. 01C01-9406-CC-00189, Montgomery County (Tenn. Crim. App. filed May 25, 1995, at Nashville). We also note the probation officer testified as to the numerous prior convictions. Their accuracy was not challenged.

This issue is without merit.

For the reasons outlined in the opinion above, the judgment of the trial court is REVERSED and the case REMANDED for a new trial on the charge of attempted rape.

_____
**JOE G. RILEY, JUDGE**

**CONCUR:**

_____

17

**JOSEPH M. TIPTON, JUDGE**

_____

**THOMAS T. WOODALL, JUDGE**

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

AUGUST 1998 SESSION

FILED

January 8, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | No. 03C01-9708-CC-00367 |
| | ) | |
| | ) | Anderson County |
| v. | ) | |
| | ) | Honorable James B. Scott, Judge |
| | ) | |
| JEFFREY R. ALLEN and | ) | (Attempted Rape) |
| JENNINGS MICHAEL COEN, | ) | |
| | ) | |
| Appellants. | ) | |

**CONCURRING OPINION**

I concur in the results reached and most of the reasoning used in the majority opinion. However, I question its implication that the district attorney general is authorized to review medical/mental health records regarding a criminal victim's treatment in a state mental health facility without having either prior authorization from the trial court under T.C.A. § 33-3-104(10)(A)(iv) or prior consent of the victim. The confidentiality provided by the statute is for the benefit of the mental health patient. There is no exception for prosecutors when the patient becomes a victim of crime.

Also, I believe that the cases upon which the majority opinion relies do not authorize the prosecutor to review a victim's records that are otherwise privileged by law. In Foster v. State, 942 S.W.2d 548, 550 (Tenn. Crim. App. 1996), this court noted that a prosecutor has a duty to search reasonable sources for materially exculpatory information. However, it said nothing about the prosecutor being allowed to invade confidential records.

19

In State v. Brown, 552 S.W.2d 383 (Tenn. Crim. App. 1977), our supreme court dealt with the then existing statutory privilege regarding communication between psychiatrist and patient that allowed disclosure in a criminal case if the mental condition of the patient was an issue or the trial court determined that the interests of justice required that the privilege be withheld. The state's primary witness had been hospitalized for an extended period of time in a state mental health facility. The issue related to whether the defendant was entitled to discovery of those records. The records reflected that she had been treated repeatedly for emotional disturbances of psychotic proportions.

First, the supreme court determined that the statutory exceptions to the privilege had been met, partly because the conviction rested upon the testimony of the witness and her twelve-year-old grandson, and her mental condition would be an issue. It noted that the psychiatric records had impeachment value. 552 S.W.2d at 385. Then, the court discussed various options that the trial court had once the defendant's discovery motion was presented. Id. at 385-86. Finally, it stated that the trial court should conduct an in camera inspection of the requested records to determine whether they have any probative value to the defendant in the preparation of his defense and to the trial of the case. "The trial judge, in his sound judicial discretion, must be the arbiter of the probative value – either as direct evidence or as a source of cross-examination -- of the findings contained in the report of [the state mental health facility]. Id. at 387.

I believe that the duty in the present case was upon the trial court to determine by a review of the records whether disclosure was proper under T.C.A. § 33-3-104(10)(A)(iv). The statutory confidentiality is for the benefit of the victim, and it does not depend upon whether the victim received treatment in a private or pubic mental health facility. In this respect, I do not believe that the trial court can delegate its responsibility to review the records in any fashion to the prosecutor. Obviously, when

20

the prosecution and the defense cooperate procedurally with the trial court, they may aid the trial court's understanding of the relevant issues in the case in order that it may make a more informed review of the records. However, disclosure of the records to either side pursuant to the statute must follow -- not precede -- the <u>trial</u> <u>court's</u> determination that "disclosure is necessary for the conduct of proceedings before it and that failure to make such disclosure would be contrary to public interest or to the detriment of either party to the proceedings." T.C.A. § 33-3-104(10)(A)(iv).

As the majority opinion notes, the record reflects that the trial court reviewed the records and indicated that it believed them to contain exculpatory information, although it did not know much about the case. Given the nature of the records, I agree with the majority opinion that the trial court, at that point, should have disclosed the records to the parties. However, if the trial court was unsure as to the exculpatory nature of the records, it was not authorized to disclose them to either party. Obviously, under such circumstances, it is, as a practical matter, the responsibility of the parties to provide the trial court with sufficient information to allow it to consider the relevance of the confidential records.

_____
Joseph M. Tipton, Judge

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

AUGUST 1998 SESSION

FILED

**January 8, 1999**

**Cecil Crowson, Jr.**
Appellate Court Clerk

STATE OF TENNESSEE,          )
                             )
    Appellee,                )          No. 03C01-9708-CC-00367
                             )
                             )          Anderson County
v.                           )
                             )           Honorable James B. Scott, Judge
                             )
JEFFREY R. ALLEN and         )          (Attempted Rape)
JENNINGS MICHAEL COEN,       )
                             )
    Appellants.              )


## CONCURRING OPINION


I concur in the results reached and most of the reasoning used in the majority opinion. However, I question its implication that the district attorney general is authorized to review medical/mental health records regarding a criminal victim's treatment in a state mental health facility without having either prior authorization from the trial court under T.C.A. § 33-3-104(10)(A)(iv) or prior consent of the victim. The confidentiality provided by the statute is for the benefit of the mental health patient. There is no exception for prosecutors when the patient becomes a victim of crime.


Also, I believe that the cases upon which the majority opinion relies do not authorize the prosecutor to review a victim's records that are otherwise privileged by law. In Foster v. State, 942 S.W.2d 548, 550 (Tenn. Crim. App. 1996), this court noted that a prosecutor has a duty to search reasonable sources for materially exculpatory information. However, it said nothing about the prosecutor being allowed to invade confidential records.

22

In State v. Brown, 552 S.W.2d 383 (Tenn. Crim. App. 1977), our supreme court dealt with the then existing statutory privilege regarding communication between psychiatrist and patient that allowed disclosure in a criminal case if the mental condition of the patient was an issue or the trial court determined that the interests of justice required that the privilege be withheld. The state's primary witness had been hospitalized for an extended period of time in a state mental health facility. The issue related to whether the defendant was entitled to discovery of those records. The records reflected that she had been treated repeatedly for emotional disturbances of psychotic proportions.

First, the supreme court determined that the statutory exceptions to the privilege had been met, partly because the conviction rested upon the testimony of the witness and her twelve-year-old grandson, and her mental condition would be an issue. It noted that the psychiatric records had impeachment value. 552 S.W.2d at 385. Then, the court discussed various options that the trial court had once the defendant's discovery motion was presented. Id. at 385-86. Finally, it stated that the trial court should conduct an in camera inspection of the requested records to determine whether they have any probative value to the defendant in the preparation of his defense and to the trial of the case. "The trial judge, in his sound judicial discretion, must be the arbiter of the probative value – either as direct evidence or as a source of cross-examination -- of the findings contained in the report of [the state mental health facility]. Id. at 387.

I believe that the duty in the present case was upon the trial court to determine by a review of the records whether disclosure was proper under T.C.A. § 33-3-104(10)(A)(iv). The statutory confidentiality is for the benefit of the victim, and it does not depend upon whether the victim received treatment in a private or pubic mental health facility. In this respect, I do not believe that the trial court can delegate its responsibility to review the records in any fashion to the prosecutor. Obviously, when

23

the prosecution and the defense cooperate procedurally with the trial court, they may aid the trial court's understanding of the relevant issues in the case in order that it may make a more informed review of the records. However, disclosure of the records to either side pursuant to the statute must follow -- not precede -- the <u>trial</u> <u>court's</u> determination that "disclosure is necessary for the conduct of proceedings before it and that failure to make such disclosure would be contrary to public interest or to the detriment of either party to the proceedings." T.C.A. § 33-3-104(10)(A)(iv).

As the majority opinion notes, the record reflects that the trial court reviewed the records and indicated that it believed them to contain exculpatory information, although it did not know much about the case. Given the nature of the records, I agree with the majority opinion that the trial court, at that point, should have disclosed the records to the parties. However, if the trial court was unsure as to the exculpatory nature of the records, it was not authorized to disclose them to either party. Obviously, under such circumstances, it is, as a practical matter, the responsibility of the parties to provide the trial court with sufficient information to allow it to consider the relevance of the confidential records.

_____
Joseph M. Tipton, Judge

24