# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs June 21, 2016

## STATE OF TENNESSEE v. JOSEPH RICHARD FREDRICKSON

**Appeal from the Circuit Court for Bedford County**
**No. 17926     Franklin L. Russell, Judge**

_____

### No. M2015-01206-CCA-R3-CD – September 29, 2016

_____

The defendant, Joseph Richard Fredrickson, was convicted of one count of the sale of marijuana, a Class E felony, one count of delivery of marijuana, a Class E felony, and one count of conspiracy to sell or deliver marijuana, a Class A misdemeanor.  The trial court merged felony convictions and sentenced the defendant as a Range II offender to four years; the defendant received a sentence of  eleven months and twenty-nine days for the misdemeanor conviction.  The trial court ordered the defendant to serve his sentences concurrently for an effective sentence of four years.  On appeal, the defendant argues that the evidence is insufficient to sustain his felony convictions, that the trial court erred in denying his motion for independent scientific testing of the marijuana, and that the trial court erred in imposing four-year sentences for his felony convictions.  Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and TIMOTHY L. EASTER, JJ., joined.

 Roger Clay Parker (on appeal) and Brian Christopher Belden (at trial), Shelbyville, Tennessee, for the appellant, Joseph Richard Fredrickson.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Robert Carter, District Attorney General; and Richard Aron Cawley, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS AND PROCEDURAL HISTORY

This case arose after the defendant sold marijuana to an undercover police officer and a confidential informant. At trial, the defendant argued that the substance he sold was not marijuana but hemp. Casey Samples, the confidential informant, testified that he first met the defendant when they worked together at McDonald's. The defendant told Mr. Samples that if he were not working at McDonald's, he would earn money by selling marijuana.

Agent Tim Miller of the 17th Judicial Drug Task Force later stopped Mr. Samples and discovered that he possessed a small amount of marijuana. Agent Miller testified that he asked Mr. Samples if he would be willing to assist the Drug Task Force, and Mr. Samples agreed. Mr. Samples testified that he knew that he could obtain a quarter of a pound of marijuana from the defendant. He spoke with the defendant and asked to purchase marijuana, and he contacted Agent Miller to inform him that the purchase was scheduled. Agent Miller sent Agent Jose Ramirez to meet with Mr. Samples and to accompany him to the drug purchase. Mr. Samples testified that he did not agree to buy hemp for the Task Force and that he never discussed purchasing hemp with the defendant.

Agent Ramirez testified that he withdrew $300 in confidential funds for the transaction, in addition to the funds already in his possession. He photocopied all of the bills so that officers could later identify them. He equipped Mr. Samples with an audio recording device, and they went to the defendant's home together. Mr. Samples, Agent Ramirez, and the defendant discussed purchasing a quarter of a pound of marijuana from the defendant, and Agent Ramirez testified that they used a variety of street terms to refer to marijuana. The defendant asked to see the money, and Agent Ramirez showed him the confidential funds. After seeing the money, the defendant briefly left his residence. When he returned, he gave Agent Ramirez a small quantity of marijuana to examine. After inspecting the marijuana, Agent Ramirez and the defendant began to discuss the purchase price. The defendant explained that he was able to get the marijuana for $350, and he said that he wanted to make a profit from the transaction. Agent Ramirez offered to pay the defendant $380, and the defendant agreed to the price. The defendant told Agent Ramirez to place the money on a countertop, and the defendant reached into the waistband of his shorts and gave a sandwich bag of marijuana to Agent Ramirez. The defendant used street terms to refer to the quality of the marijuana and to assure Agent Ramirez and Mr. Samples that it was of good quality. Agent Ramirez and Mr. Samples told the defendant that they wished to purchase marijuana from him so that they could re-sell it to other customers.

2

Before leaving the defendant's residence, Agent Ramirez spoke with him about purchasing another quarter of a pound of marijuana later that evening. The defendant agreed to the future sale, and when Agent Ramirez asked him about the price, the defendant responded that whatever Agent Ramirez felt like paying him in addition to what the defendant paid would be acceptable. Agent Ramirez and Mr. Samples then left the residence, and Agent Ramirez told the defendant that he would call him later that evening to purchase the second quarter of a pound of marijuana. Both Agent Ramirez and Mr. Samples stated that the defendant never identified the substance he sold them as hemp. Mr. Samples testified that he was familiar with hemp, as he occasionally made hemp necklaces and bracelets, and that the substance the defendant sold him and Agent Ramirez was marijuana.

During the transaction, Agent Miller and Agent Shane George were nearby providing surveillance. After Agent Ramirez and Mr. Samples left the premises, Agents Miller and George approached the defendant's trailer and secured the area. Agent Miller asked to speak privately with the defendant, and they went into a back bedroom. He asked the defendant if he had "anything on him," and the defendant handed him a $20 bill that was later identified as one of the bills used by Agent Ramirez to purchase the marijuana. Agent Miller asked the defendant if he would be willing to turn in his supplier. The defendant agreed, and he revealed that his neighbor was his supplier. He communicated with his neighbor via social media to arrange the purchase of a second quarter of a pound of marijuana, and the defendant took the agents to his neighbor's trailer. In the trailer, Agent Miller found the remaining $360 that Agent Ramirez had given to the defendant. Both agents testified that the defendant never said the substance he sold or was going to purchase was hemp.

Agents submitted the substance to the Tennessee Bureau of Investigation ("TBI") laboratory to have it tested. Special Agent Laura Cole, a forensic scientist with the TBI, weighed the substance and found that it was 109.02 grams. She next performed a "microscopic test" and "a color test" on the substance. The microscopic test revealed that the substance had cystolithic hairs, which Special Agent Cole testified were unique to marijuana plants. She testified that she had never seen cystolithic hairs in any other plant. After she discovered the cystolithic hairs, she performed a color test. Both parts of the two-part color test returned a purple color, which indicated a positive test for marijuana. She testified that she was not aware of any other substance that produced the same results from the color test as marijuana. Based on her tests, Special Agent Cole concluded that the substance was marijuana.

Special Agent Cole testified that the TBI did not identify hemp and that hemp fell within the jurisdiction of the Tennessee Department of Agriculture. She explained that industrial hemp was legal but that the grower needed a license and certification to grow

the substance. She stated that if a substance did not have a certificate indicating that it was industrial hemp, it was classified as marijuana under Tennessee law. She testified that a gas chromatograph mass spectrometer could be used to confirm the presence of THC, a substance in marijuana. She testified that she had the ability to perform this test but that she did not because she "had no doubts" about the results of the color test. She explained that the THC level in hemp would be "extremely low," and she was unsure "if it would even give a positive color test." She stated that if she tested hemp, she would not have seen "the vibrant purple color" present in her color test of the substance that the defendant sold. She explained that if the substance she tested was industrial hemp, the second layer of the color test would not have been purple.

The defendant testified on his own behalf. He testified that based on his conversation with Mr. Samples, he believed that Mr. Samples and Agent Ramirez wished "to purchase industrial hemp, so they could practice arts and crafts with it." He testified that he purchased the substance from his neighbor, and he believed that his neighbor had purchased the substance from the Tennessee Department of Agriculture. The defendant agreed that neither Agent Ramirez nor Mr. Samples referred to the substance as hemp during the transaction. He testified that he used street terms as "a bit of salesmanship" to describe the substance "to fit in" with Agent Ramirez and Mr. Samples because they used the terms first. He stated that he did not voluntarily take officers to his trailer but that officers told him to accompany them because he was under arrest.

At the conclusion of the proof, the jury convicted the defendant of the sale of 0.5 ounces or more of marijuana; delivery of 0.5 ounces or more of marijuana; and conspiracy to sell and deliver 0.5 ounces or more of marijuana. The trial court merged the defendant's convictions for sale and delivery of marijuana. The court held a sentencing hearing to determine the length of the defendant's sentence.

At the sentencing hearing, Kimberly Goney testified that she prepared the defendant's presentence report. The presentence report included two convictions in Utah for marijuana production and two for child endangerment. All of these offenses were committed on the same date, and Ms. Goney testified that Utah classified all four offenses as felonies. The defendant had additional misdemeanor convictions in Utah, along with a felony conviction for possession of drugs. The defendant received probation for the possession of drugs conviction, and the presentence report indicates that his probation was revoked twice.

The trial court found that the defendant was a Range II offender. The trial court found that two enhancement factors applied. The trial court found that the defendant had a prior history of convictions other than those necessary to establish his range based upon his misdemeanor convictions in Utah. *See* T.C.A. § 40-35-114(1). The trial court also

4

found that he failed to comply with the conditions of a sentence involving release into the community, noting that the defendant twice had his probation revoked for the felony possession of drugs conviction. *See* T.C.A. § 40-35-114(8). The court applied two mitigating factors, that the defendant's criminal conduct did not cause or threaten serious bodily injury and that the defendant assisted the authorities in uncovering offenses committed by other persons or in detecting or apprehending other persons who had committed the offenses, but the court gave these factors little weight. *See* T.C.A. § 40-35-114(1), (9). The court imposed a four-year sentence for the merged the felony convictions, sentenced the defendant to eleven months and twenty-nine days for the misdemeanor, and ordered the defendant to serve the sentences concurrently.

The defendant filed a motion for new trial, which the trial court denied. He filed a timely notice of appeal, and we proceed to consider his claims.

## ANALYSIS

The defendant argues that the evidence was insufficient to sustain his convictions. He contends that the trial court should have granted his motion for independent testing. He also takes issue with his sentence, arguing that the trial court erred when it imposed the maximum sentence for a Range II offender.

## I. Sufficiency of the Evidence

The defendant challenges the sufficiency of the evidence,[1] arguing that the proof against him was largely circumstantial, that the State failed to exclude every reasonable hypothesis except for guilt, and that the circumstances were not fairly established by the evidence. He also contends that the TBI's scientific testing was insufficiently precise to show that the substance was not legal hemp. The State responds that the evidence is sufficient.

When a defendant challenges the sufficiency of the evidence, the relevant question for this court is "whether, after viewing the evidence in the light most favorable to the State, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). On appeal, "'the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom.'" *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn.

---

[1] The defendant only challenges the sufficiency of the evidence regarding his convictions for the sale and delivery of marijuana. He does not challenge the sufficiency of the evidence for his conviction for conspiracy to sell and deliver marijuana.

2000)).  Therefore, this court will not re-weigh or reevaluate the evidence.  *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).  Instead, it is the trier of fact, not this court, who resolves any questions concerning "the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence."  *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997).

A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt.  *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992).  The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction.  *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).  This court applies the same standard of review regardless of whether the conviction was predicated on direct or circumstantial evidence.  *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011).  "Circumstantial evidence alone is sufficient to support a conviction, and the circumstantial evidence need not exclude every reasonable hypothesis except that of guilt."  *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012).

Tennessee Code Annotated section 39-17-417(a) (2010) provides that it is an offense to knowingly deliver or sell a controlled substance.  Marijuana is a controlled substance as defined in the statute.  *See* T.C.A. § 39-17-417(g)(1).  The sale or delivery of "not less than one-half (1/2) ounce (14.175 grams) nor more than ten pounds (10 lbs.) (4535 grams) of marijuana" is a Class E felony.  *Id.*

Viewing the evidence in the light most favorable to the State, Mr. Samples agreed to aid the Drug Task Force in its efforts to apprehend drug dealers.  Mr. Samples testified that he called the defendant and learned that he could obtain marijuana.  Both Mr. Samples and Agent Ramirez testified that they went to meet with the defendant to purchase a quarter of a pound of marijuana.  The defendant told Agent Ramirez that he paid $350 for the marijuana but that he wanted to make a profit from the transaction.  Agent Ramirez offered the defendant $380, and the defendant accepted the offer.  He then handed a sandwich bag of marijuana to Agent Ramirez.  This transaction was recorded, and the jury listened to the audio recording.  Officers later discovered one of the marked $20 bills Agent Ramirez used in the transaction in the defendant's possession, and they discovered the remaining $360 in the home of the person the defendant identified as his marijuana supplier.  Special Agent Cole weighed the substance sold to Agent Ramirez, and she determined that it weighed 109.02 grams.  She performed a microscopic test and saw that the substance contained cystolithic hairs, which were unique to marijuana plants.  She also performed a "color test," which tested positive for marijuana.  She explained that testing the substance with a gas chromatograph mass spectrometer was not necessary because the first two tests established that the substance was marijuana.  She acknowledged that the TBI did not test for industrial hemp.  However, she also testified that the results of the color test indicated that the substance

6

was not hemp but marijuana. The defendant used street terms to refer to the marijuana, and he did not assert that it was hemp at the time of the sale or when police questioned him about his neighbor. The issue of whether the substance was marijuana or industrial hemp was squarely before the jury, and the jury chose to credit the testimony of the State's witnesses that the substance was marijuana. Based upon this evidence, we conclude that the evidence was sufficient for the jury to find the defendant guilty of the sale and delivery of marijuana in an amount not less than one-half ounce nor more than ten pounds. The defendant is not entitled to any relief.

## II. Independent Testing

The defendant argues that the trial court should have granted his motion for independent testing of the substance sold to Agent Ramirez. He contends that in denying the motion, the trial court relied on false information that the TBI was unable to perform the test because Special Agent Cole testified at trial that the laboratory had a test that would ascertain the specific amount of THC in a substance.[2] The State responds that the defendant never filed a motion for independent testing and that the issue is waived. The State further contends that the defendant is not entitled to plain error relief.

The technical record does not contain a motion for independent testing; however, it does contain numerous pretrial motions, including a pro se motion filed by the defendant. On March 27, 2015, the defendant filed a pro se "Request for Mardsen Review." In the motion, the defendant alleged that he had several issues with trial counsel's representation, including trial counsel's failure to request independent testing of the substance purchased from the defendant. On March 30, 2015, the trial court held a hearing on the motion that was essentially an airing of the defendant's grievances with trial counsel. During the hearing, the defendant testified that he wanted trial counsel to file a motion to test the substance independently. He also testified that he did not believe that the TBI laboratory possessed the equipment to test the substance for industrial hemp. The trial court explained that it did not believe that requesting scientific data would properly be the subject of a motion to suppress but that it might be proper in a motion to compel discovery. The trial court also stated that it was "not hearing anything that the State is actually obligated to provide." The court informed the defendant that he would be permitted to challenge the findings of the State's expert on cross-examination.

---

[2] We have reviewed the transcript of the hearing. While the defendant appears to assert that he was told that the TBI did not have the equipment to test the THC level of the substance, the trial court at no point stated that the defendant was not entitled to the test because the State did not possess the equipment to perform the test. The defendant's characterization of the findings of the trial court is incorrect.

At the conclusion of the hearing, the trial court issued a written order dismissing the defendant's petition. The order noted that any disagreements between trial counsel and the defendant had been resolved and that the other issues raised by the defendant could be addressed at trial through objections and motions for directed verdicts. There was not a motion for independent testing filed, and the trial court's statement that the defendant could rely on cross-examination to challenge the findings of Special Agent Cole was not a finding on the issue of independent testing.

After his convictions, the defendant filed a variety of pro se motions, including a motion to amend the verdict and a motion for arrest of judgment. In the motion to amend the verdict, he alleged that the State had not proven that the substance was not hemp. The trial court dismissed the motion because the defendant was still represented by counsel at the time. In his motion for arrest of judgment, the defendant alleged that in the March 30, 2014 hearing, he requested to independently test the substance. He contended that the State failed to establish at trial that the substance contained THC with a concentration greater than 0.3 percent. He argued that since the State had failed to prove that the substance was illegal, his judgments of convictions should be reversed.

Trial counsel filed a motion for new trial subsequent to the defendant's various pro se filings. The motion alleged that the evidence was "insufficient as to disqualify the substance from being an alternative substance such as industrial hemp." The motion for new trial did not reference a motion to request independent testing of the substance or the trial court's failure to grant said motion.

The trial court issued a written order striking the defendant's motion to arrest the judgment. The court found that all motions filed on the defendant's behalf while represented by counsel should be filed by counsel unless the motion related to the attorney client relationship. The trial court also found that trial counsel's motion for new trial was sufficiently broad to permit the exploration of the issues raised in the motion to arrest the verdict at the hearing on the motion for new trial. At the hearing, the trial court again mentioned that trial counsel was free to raise some of the issues raised in the defendant's pro se motions if trial counsel felt that they were appropriate. Trial counsel did not raise the issue of a motion for independent testing.

We agree with the State that the defendant has not sufficiently preserved this issue for review. It does not appear that the defense filed a motion to request independent testing, and if such a motion was filed, the defendant failed to include it in the record. *See State v. Ballard*, 855 S.W.2d 557, 560 (Tenn. 1993) (stating that it is the duty of the appellant "to prepare a record which conveys a fair, accurate and complete account of what transpired with respect to the issues forming the basis of appeal"). Further, even if we were inclined to construe the defendant's "Request for Mardsen Review" and the

8

subsequent hearing as a filing of a motion for independent testing, the defendant filed the motion while represented by counsel. A trial court is not required to accept pro se motions filed by a defendant who is represented by counsel. *See State v. Muse*, 637 S.W.2d 468, 469-70 (Tenn. Crim. App. 1982) (citing *State v. Burkhart*, 541 S.W.2d 365, 371 (Tenn. 1976)). As a result, the defendant is entitled to relief only if the issue meets the criteria for plain error review. *See* Tenn. R. App. P. 36(a), (b) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effects of an error" but allowing this court to review an issue for plain error).

> This court considers five factors in determining whether plain error exists:
>
> (a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is "necessary to do substantial justice."

*State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994). The existence of all five factors must be established to warrant plain error review. *Smith*, 24 S.W.3d at 283. If this court finds that one of the factors cannot be established, consideration of the remaining factors on appeal is unnecessary. *Id.* An error must be "of such great magnitude" that it probably affected the outcome of the trial. *Id.* (quoting *Adkisson*, 899 S.W.2d at 642). Only errors that are "especially egregious in nature, striking at the very heart of the fairness of the judicial proceeding," will rise to the level of plain error. *State v. Page*, 184 S.W.3d 223, 231 (Tenn. 2006).

A defendant has the right to request a specimen of contraband in order to have it independently tested and analyzed. *See* Tenn. R. Crim. P. 16(a)(1)(F), Advisory Comm'n Cmts. ("It is intended that section (a)(1)(F), as it relates to the inspection of tangible objects, shall mean that in controlled substance cases the defendant upon request must be furnished a sufficient quantity of the substance to permit a scientific examination for identification purposes."); *see also State v. Gaddis*, 530 S.W.2d 64, 68-69 (Tenn. 1975); *State v. Gilbert*, 751 S.W.2d 454, 460 (Tenn. Crim. App. 1988). However, "[a] motion for such inspection and analysis may be made at any time after arrest but must be made in ample time so as not to result in a postponement or continuance of the final hearing." *Gaddis*, 530 S.W.2d at 69.

We conclude that plain error review is not warranted. Any request for independent testing came from the defendant while he was represented by counsel, and

the trial court is not required to consider pro se motions filed while a defendant is represented by counsel. *Muse*, 637 S.W.2d at 469-70. As a result, the defendant cannot show that the trial court breached a clear and unequivocal rule of law by failing to permit the defendant to independently test the substance. Additionally, the defendant cannot demonstrate that consideration of the issue is "necessary to do substantial justice." Special Agent Cole testified that her testing revealed that the substance was marijuana and not hemp. She testified that it was not necessary to use the gas chromatograph mass spectrometer to test the specific level of THC in the substance because her tests conclusively established that the substance was marijuana. We conclude that he is not entitled to plain error relief.

### III. Sentencing

The defendant argues that the trial court erred by sentencing to the maximum sentence for a Range II offender convicted of a Class E felony because the amount of marijuana involved in his case was "nominal." He states that he did not raise the issue in his motion for new trial and that this court may only review the issue for plain error. The State argues that the trial court properly sentenced the defendant. We note that issues related to sufficiency of the evidence and sentencing are not waived by failure to raise them in a motion for a new trial, and we proceed to address the defendant's challenge to sentencing. Tenn. R. App. P. 3; *State v. Bough*, 152 S.W.3d 453, 460 (Tenn. 2004) (citing *State v. Martin*, 940 S.W.2d 567, 569 (Tenn. 1997)).

When imposing a sentence, the trial court should consider: (1) the evidence, if any, received at trial and at the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the applicable enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant wishes to make in his own behalf about sentencing. T.C.A. § 40-35-210(b)(1)-(7). This court reviews challenges to the length of a sentence under an abuse of discretion standard, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The reviewing court will uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10. The weighing of various enhancement and mitigating factors is within the sound discretion of the trial court. *State v. Carter*, 254 S.W.3d 335, 345 (Tenn. 2008). The misapplication of an enhancement or mitigating factor by the trial court "does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act,

as amended in 2005." *Bise*, 380 S.W.3d at 706. A sentence imposed by the trial court that is within the appropriate range should be upheld "[s]o long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute." *Id.*

The record reflects that the trial court considered the purposes and principles of the Sentencing Act when sentencing the defendant to a within-range sentence for a Range II offender. The record also supports the findings of the trial court regarding the enhancement factors. The defendant's presentence report indicates that he has additional prior convictions to those necessary to establish him as a Range II offender. The presentence report also indicates that the defendant twice had his probation revoked, demonstrating a failure to comply with the terms of a sentence involving release into the community. As a result, we conclude that the trial court did not abuse its discretion in sentencing the defendant, and he is not entitled to plain error relief.

## CONCLUSION

Based upon the foregoing analysis, we affirm the judgments of the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE