IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
May 1, 2024 Session

**STATE OF TENNESSEE v. TOMAR DONYELLE BEARD**

**Appeal from the Circuit Court for Madison County**
**No. 22-189   Donald H. Allen, Judge**

_____

**No. W2022-01711-CCA-R3-CD**

_____

A Madison County jury convicted the Defendant, Tomar Donyelle Beard, of attempted first degree murder, aggravated assault, and employing a firearm during the commission of a dangerous felony. The trial court imposed an effective sentence of thirty-one years in the Tennessee Department of Correction. On appeal, the Defendant asserts that the trial court erred when it excluded the Defendant's expert from testifying and denied the Defendant's motion for a continuance. After review, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JILL BARTEE AYERS and JOHN W. CAMPBELL, SR., JJ., joined.

Mitchell A. Raines, (on appeal), Appellate Division Assistant Public Defender; Jeremy B. Epperson, District Public Defender; Joshua L. Phillips, (at trial), Assistant Public Defender, Jackson, Tennessee, for the appellant, Tomar Donyelle Beard.

Jonathan Skrmetti, Attorney General and Reporter; Richard D. Douglas, Senior Assistant Attorney General; Jody S. Pickens, District Attorney General; and Alfred L. Earls and Matthew Floyd, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts and Procedural History**

This case arises because the Defendant shot the victim and then hit him with a car on February 20, 2020. A Madison County grand jury indicted the Defendant for attempted first degree murder, aggravated assault, and employing a firearm during the commission of a dangerous felony. On June 7, 2021, the Defendant filed a motion for forensic evaluation to determine whether the Defendant was competent to stand trial and the trial court granted the motion.

The Defendant was initially referred to Pathways for the forensic evaluation. Upon recommendation of Pathways, the trial court ordered that further evaluation be done at Western Mental Health Institute ("WMHI"). On November 22, 2021, WMHI issued this evaluation letter to the court:

[The Defendant] was admitted to [WMHI] on October 28, 2021, by order of your court. He was sent here for evaluation of his ability to stand trial on the charges of Attempted First Degree Murder and Employing a Firearm During Commission of a Dangerous Felony and for an assessment of his mental condition at the time of the alleged offenses under T.C.A. 33-7-301(a).

After completion of the competency evaluation, the staff has concluded he has sufficient present ability to consult with his attorney with a reasonable degree of rational understanding and does have a rational and factual understanding of the proceedings against him. In making this determination, it was concluded that [the Defendant] has the ability to cooperate with his attorney in his own defense, that he has awareness and an understanding of the nature and object of the proceedings, and [that he] has an understanding of the consequences of the proceedings.

With regard to [the Defendant]'s mental condition at the time of the alleged offenses, based on T.C.A. 39-11-501, it is the opinion of the staff of [WMHI] that at the time of the commission of the acts constituting the offenses, he was able to appreciate the nature and wrongfulness of such acts.

The staff also concluded that at the time of the alleged offenses, [the Defendant] did have the capacity to form the culpable mental state. Therefore, diminished capacity is not supported.

The staff has determined that [the Defendant] does not meet the standards for judicial commitment to a mental health institute pursuant to T.C.A. 33-6-502 and 33-7-301(b).

Arrangements for the release of [the Defendant] back into the custody of the Madison County Sheriff s Department have been made for November 22, 2021. It is recommended that [the Defendant] receives follow-up services provided by the local mental health center while in jail awaiting further action from your court.

The Defendant's trial was set for April 5, 2022, and, on March 30, 2022, the defense filed a notice of insanity/diminished capacity defense and a notice of intent to use expert testimony. The following day, the State filed for a continuance to allow time to review the expert report that it had received that day. The trial court granted the State's motion for a continuance, and the trial was set for September 20, 2022.

On September 15, 2022, the State filed a motion to exclude the Defendant's expert testimony because the Defendant had failed to provide the expert's reports as required by Tennessee Rule of Criminal Procedure 16. Although the record does not contain the motion, the parties agree that the Defendant filed a motion for a continuance, the day before trial, on September 19, 2022, and the trial court held a hearing that day on both the State's motion and the Defendant's motion.

At the hearing, trial counsel explained that, as part of the Defendant's "discharge plan" from his WHMI evaluation, the Defendant was to take psychiatric medication. The Defendant, however, had not been receiving the medication, and trial counsel had grown concerned about the Defendant's mental health. As a result, trial counsel asked Dr. Lynn Zager, Ph.D., to evaluate the Defendant earlier on the day of the hearing. Dr. Zager met with the Defendant via zoom and concluded that he was not competent to stand trial. Thus, trial counsel was seeking a continuance until the Defendant could be "deemed competent."

Trial counsel called Dr. Zager to testify about her evaluation of the Defendant. Dr. Zager testified that she was initially contacted by the Defendant's first attorney ("original counsel") and had more recently been contacted by trial counsel to "become reinvolved with the case." She began her evaluation of the Defendant on August 10, 2020, and then continued that evaluation to November 23, 2020. Dr. Zager's most recent contact with the Defendant was the day of the hearing, September 19, 2022. Dr. Zager had "grave concerns" about the Defendant's competency to stand trial. She stated that the Defendant's ability to communicate was "severely impaired" to the extent that he did not speak with her at all during the Zoom evaluation. He "shook his head and shrugged his shoulders, but in terms of speaking, he mouthed some things," and Dr. Zager was able to "read his lips." She reiterated that he did not "communicate at all." Based upon this interaction she believed the Defendant would be unable to confer with trial counsel and participate in his defense.

On cross-examination, Dr. Zager acknowledged that she was unable to conduct a typical competency evaluation that day because the Defendant was not speaking. She admitted that she could not determine whether the Defendant was malingering. She stated, however, that jail staff had indicated to her that the Defendant had not spoken in four months. In her past interactions with the Defendant in 2020, Dr. Zager had "good communications" with him.

3

The trial court asked Dr. Zager if she had generated a written report of her findings following her 2020 evaluations of the Defendant. She said she had not given one to Defendant's original counsel but that she had provided a report to trial counsel in March 2022. Trial counsel stated that Dr. Zager's report had been provided to the State. The State responded that the only report received was a "draft report" and the State was entitled to discovery of Dr. Zager's notes or her reports. The State argued that the defense could not avoid discovery rules by not preparing a report. Trial counsel responded that he had "provided everything to the State that I have," which was the "two-page letter" from Dr. Zager. This two-page document was given to the State on March 31, 2022, and was the catalyst for the April trial being continued to September due to the State's late receipt of the "draft report."

The trial court identified the WHMI November 22, 2021 evaluation letter and read it aloud. With respect to the portion of the letter that "recommended that [the Defendant receive follow-up services provided by the local mental health center," the trial court asked whether trial counsel had followed up on the services recommended in the WHMI letter for his client. Trial counsel responded that, when he saw the Defendant's condition deteriorate, he contacted Dr. Zager to "come and see" the Defendant "today." Trial counsel confirmed that "today," the day before trial, was the first time that he had asked Dr. Zager to evaluate the Defendant. Trial counsel explained that it was only in the last few weeks that he had seen a decline in the Defendant's mental condition. The trial court asked trial counsel about the reference to psychiatric medication in the Defendant's motion to continue the trial, and trial counsel said he was relying on the final sentence from the letter read by the trial court, recommending that the Defendant receive "follow-up services provided by the local mental health center while in jail awaiting further action from [the] court." The trial court then asked whether Pathways had ordered psychiatric medications, and trial counsel responded, "I do not know."

The State then argued that Dr. Zager should not be allowed to testify at trial because she had not reviewed significant portions of the discovery materials. The State claimed that Dr. Zager had not reviewed the Defendant's statement to the police, witness statements, video recordings of the crime, and video recordings of the Defendant's police interview. The trial court asked Dr. Zager if she had reviewed discovery and she replied, "I have seen some early on but not recently."

The trial court denied the motion to continue and stated that it would "wait and take up [the motion to exclude Dr. Zager's testimony]" later.

At trial, the evidence showed that the Defendant fired a gun at the unarmed victim numerous times before the victim fled on foot. The Defendant followed in a car, hitting

4

the victim and crashing into a utility box. The Defendant then fled on foot and was later apprehended outside a nearby assisted living facility.

After the State's proof, the defense asked the trial court to rule on the State's motion to exclude Dr. Zager's testimony. The State asserted that the defense, as recently as the week before trial, had told the State that they had provided all the information in the form of Dr. Zager's two-page "draft report." Dr. Zager's evaluation occurred prior to discovery in the case, thus, she formed her opinion without consideration of significant evidence thereby rendering her unqualified to testify as an expert. The State argued that had Dr. Zager considered the State's discovery, which included the surveillance video of the shooting, the recording of the Defendant's police interview, and witness statements, she may have formed a different opinion as to the Defendant's mental competency. The State argued that any such opinion should have been discoverable by the State.

The defense maintained that the State was only entitled to Dr. Zager's "draft report." Trial counsel agreed that Dr. Zager's opinion and report were completed before the WHMI forensic evaluation. The trial court noted that the "draft report" had a section "information utilized" that listed Christ Community Health Services records, the affidavit of complaint, phone interviews with the Defendant's father and the Defendant's sister, jail medical records from November 18, 2020, and Pathways medical records as of January 28, 2021. Trial counsel admitted that he had not sent those documents to the State but asserted that the State "should have" obtained the documents on their own. The trial court asked trial counsel if he had given everything he had to the State, and trial counsel stated that the two-page "draft report" was all he had. The trial court ruled that Dr. Zager could not testify because the information she relied upon was never reported to the State, thereby preventing the State experts from being able to consider this information. The trial court granted the Defendant's request to make an offer of proof the next morning.

The morning after the hearing, the Defendant presented the testimony of Lynne Donna Zager, a clinical psychologist, who the trial court qualified as an expert witness in the field of forensic psychology. Dr. Zager conducted a psychological exam of the Defendant at the behest of the Defendant's original counsel. She conducted an evaluation on August 19, 2020, and then continued her assessment until November 23, 2020. She had most recently "seen" the Defendant on September 19, 2022, the day before trial, to assess his competency to stand trial. Additionally, Dr. Zager reviewed the Christ Community Health Center Services record, "limited AG information," conducted a phone interview with the Defendant's father and his sister, reviewed a letter from the Defendant's niece, and reviewed Pathways' medical records. She had since reviewed WHMI medical records and "the video."

5

Dr. Zager recommended, at the time of the 2020 evaluation, that the Defendant be considered competent to stand trial but that he could not appreciate the wrongfulness of his behavior at the time of the offense. She based this opinion on the Defendant's history and her evaluation of him. Dr. Zager noted that her consideration of his history included the records from Christ Community Health Center Services that began in 2011 and extended until six months before his arrest in this case. These records identified the Defendant's mental health issues, paranoia and delusional thoughts, prior to the offense. Dr. Zager determined that the Defendant suffered from a substance-induced psychotic disorder based upon his use of methamphetamine, ecstasy, marijuana, and amphetamines at the time of the offense. His use of these drugs, according to Dr. Zager, was documented in his jail medical records. Due to this drug use, Dr. Zager opined that the Defendant suffered from delusions and hallucinations that interfered with his functioning. In support of her diagnosis, she pointed out that, although not a diagnosis, WHMI records also "noted" that the Defendant demonstrated "psychotic features based on substance use." Dr. Zager made her diagnosis before she watched the video recording of the shooting. The surveillance video footage did not change her expert opinion that the Defendant was unable to appreciate the wrongfulness of his actions at the time of the offense.

On cross-examination, Dr. Zager indicated that she had the Christ Community Health Center Services records with her in court and that the records had been given to her by the Defendant's original counsel. She had not given the Christ Community Health Center Services records to trial counsel because she believed he had them. Additionally, she stated that she did not normally "turn over other people's records." She agreed that the Christ Community Health Center Services records were "very important" in her determination. The "limited AG information" she reviewed consisted of the affidavit of complaint and the arrest ticket. Dr. Zager stated that she gave trial counsel her notes of her evaluation of the Defendant and her notes of her phone interviews with the Defendant's family. She did not, however, give trial counsel a copy of the jail medical records, reiterating that she did not "give somebody else's records." She also gave trial counsel her "continued evaluation" of the Defendant on November 23, 2020, but not the Pathways medical records.

Dr. Zager had watched the surveillance footage of the shooting the day before the offer of proof but still had not seen the recording of the Defendant's interview with the police. She agreed that a video recording of the Defendant's police interview would have "been important" for her assessment. She agreed that bodycam footage of his arrest would also have been "valuable." Dr. Zager, however, had not viewed the bodycam footage of the Defendant's arrest or his behavior at the hospital on the day of his arrest.

Dr. Zager agreed that in the "Findings" portion of her "draft report" she did not make any mention of the Christ Community Health Center Services records or mention her

interviews of the Defendant's family. She agreed that she did not mention the jail records either and referenced her omission of this information as a basis for her diagnosis as "a mistake." She agreed that the report did not clearly indicate what information she relied upon in her evaluation of the Defendant.

Dr. Zager testified that the August 19, 2020 interview was in person and that the other two interviews were via Zoom. She estimated that the first evaluation lasted approximately an hour and a half, the second on November 23, 2020, lasted about an hour, and the final evaluation on September 19, 2022, lasted about thirty minutes. She explained that none of this information was in her "draft report" because she "tend[ed] to write very brief reports." She agreed that she did not include in the report what information she used in her opinion and how she analyzed and weighed that information.

Upon further questioning by the trial court, Dr. Zager confirmed that the Psychological Services draft report, dated March 31, 2022, had been requested by original counsel. Dr. Zager never provided original counsel with a written report; she gave him a "verbal report." The trial court noted that trial counsel filed, on March 30, 2022, a notice of insanity/diminished capacity, and Dr. Zager's draft report was dated March 31, 2022. Dr. Zager recalled that she had a phone conversation with trial counsel before preparing the report. She reiterated that she did not give trial counsel the Christ Community Health Center Services records because providing another institution's records to a third party can be "problematic." She stated that she gave all other notes that she took during her evaluation to trial counsel, which included interviews with the Defendant, interviews with the Defendant's family, and a letter from the Defendant's niece. Dr. Zager received the Defendant's jail medical records from original counsel. Although she relied on the information in the medical records for her opinion, she did not give the jail medical records to trial counsel because "they weren't mine to give." She stated that the last time she spoke with the Defendant was November 23, 2020. Dr. Zager completed her evaluation as of February 12, 2021, but did not generate any report until March 31, 2022, more than a year later.

The State argued that a Rule 16 discovery violation by the Defendant had occurred because the State was not given the Christ Community Health Center Services records, Dr. Zager's notes on the evaluation, notes on the phone interview of the Defendant's or the phone interview of the Defendant's sister, the jail medical records, the Pathways records, or the letter from the Defendant's niece. The State specifically asked for that information, and the defense had failed to provide it. The State argued that the failure to provide this information precluded the State from preparing to cross-examine Dr. Zager. The State also argued that expert witnesses for the State had not had the opportunity to review this material.

Trial counsel argued that the defense never intended to introduce any of those documents into evidence, only Dr. Zager's report. The Court responded, "But they're entitled to know the basis of her report. They're entitled to review the same information that she reviewed. They're entitled to that, [trial counsel] and, according to Dr. Zager's testimony, she gave you most of that."

Trial counsel maintained that he provided everything under Rule 16 that the State was entitled to. The trial court responded:

> Okay. Well, . . . I'm granting the State's motion to disallow the expert testimony of Dr. Lynne Zager.
>
> Again, I find that the Defense failed to provide the documentation and request for discovery concerning her opinions.
>
> I understand [Dr. Zager] apparently generated a report, I guess, a day after the Defense filed a notice for insanity, but that's you know, this case was set for trial, I believe, April the 5th of this year originally and then this letter was dated March 31, 2022, just - - just a few days before the first trial date. I continued the trial date, but even after I continued the trial date, the [State] tells me, and I trust he's telling me correctly, he made a specific request for all the documentation from you and your office, and apparently you have more than - - than this --- just this report.
>
> You have more, according to Dr. Zager's testimony, you have a whole lot more than this two-page report. I'm not sure why you didn't provide it to [ ] the State, but [ ] you didn't."
>
> So I'm going to grant the motion to disallow the expert testimony of Dr. Lynne Zager.

The trial resumed, and the Defendant presented several family members who testified about their observations of changes in the Defendant's behavior in the months leading up to the shooting.

After hearing the evidence, the jury convicted the Defendant of attempted first degree murder, aggravated assault, and employing a firearm during the commission of a dangerous felony, and the trial court imposed an effective sentence of thirty-one years in the Tennessee Department of Correction. It is from these judgments that the Defendant appeals.

## II. Analysis

On appeal, the Defendant asserts that the trial court erred when it excluded the Defendant's expert from testifying and when it denied the Defendant's motion for a continuance.

## A. Exclusion of Dr. Zager's Testimony

The Defendant asserts that the trial court erred when it prohibited Dr. Zager from testifying about the Defendant's diminished capacity at the time of the offense. The Defendant argues that this error entitles him to a new trial because the trial court's ruling effectively foreclosed his opportunity to present a meaningful defense. The Defendant maintains that he was not required to provide the State anything other than Dr. Zager's "summary report." The State responds that Dr. Zager had not prepared a final report at the time of trial and that the Defendant failed to disclose to the State the information that the expert used to reach her conclusions. The State submits that because a violation of Tennessee Rule of Criminal Procedure 16 occurred, the trial court properly exclude the testimony. The State also argues that the trial court properly excluded Dr. Zager's expert testimony because it was unreliable.

Initially, the primary purpose of the criminal trial is to discover the truth. This goal can only be achieved by the avoidance of unnecessary surprise, through complete and reciprocal discovery. *See State v. Brown*, 552 S.W.2d 383, 386 (Tenn. 1977); *State v. Gaddis*, 530 S.W.2d 64, 69 (Tenn. 1975). It is perplexing for either side in any litigation to be faced with unanticipated testimony, expert or otherwise, on material issues.

The reciprocal discovery rules provide that if the defendant requests disclosure under the rules of discovery and the State complies, "the defendant shall permit the state, on request, to inspect and copy or photograph . . . tangible objects, . . . if: (i) the item is within the defendant's possession, custody, or control; and (ii) the defendant intends to introduce the item as evidence in the defendant's case-in-chief at trial." Tenn. R. Crim. P. 16(b)(1)(A). A defendant also "shall permit the state, on request, to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with the particular case, or copies thereof, if:" (i) the defendant has possession, custody, or control of the item; (ii) the defendant intends to introduce the item during the defense's case-in-chief; or "(iii) the defendant intends to call as a witness at trial the person who prepared the report, and the results or reports relate to the witness's testimony." Tenn. R. Crim. P. 16(b)(1)(B)(i)-(iii).

If a party fails to comply with the rules of discovery, the trial court may, in its discretion, fashion any one of a number of remedies, including exclusion of the evidence.

Tenn. R. Crim. P. 16(d)(2)(C). The sanction must fit the circumstances of each case. *State v. James*, 688 S.W.2d 463, 466 (Tenn. Crim. App. 1984). "Evidence should not be excluded except when it is shown that a party is actually prejudiced by the failure to comply with discovery and that the prejudice cannot be otherwise eradicated." *Id.*

"It is well settled that decisions with regard to pre-trial discovery matters rest within the sound discretion of the trial court. The decision of the trial court in discovery matters will not be reversed on appeal unless a clear abuse of discretion is demonstrated." *Benton v. Snyder*, 825 S.W.2d 409, 416 (Tenn. 1992). "The abuse of discretion standard contemplates that before reversal the record must show that a judge 'applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining.'" *State v. Coley*, 32 S.W.3d 831, 833 (Tenn. 2000) (citations omitted), *overruled on other grounds by State v. Copeland*, 226 S.W.3d 287 (Tenn. 2007).

In this case, the record reflects that Dr. Zager's only report was designated a "draft report." The document is barely more than a page in length, and the only reference to reports or information upon which the opinion is based are the jail medical records. During the offer of proof, however, Dr. Zager admitted that she relied upon her August and November 2020 evaluations of the Defendant, interviews of the Defendant's relatives, and various medical reports in making her conclusions. She defined the omission of the mention of these records in her findings as a "mistake." Our supreme court has held, "when a psychologist or psychiatrist does not prepare a summary report, but instead relies on extensive memoranda to record not only observations and hypotheses but also evaluations, such records are discoverable under Rule 16(b)(1)(B)." *State v. Nichols*, 877 S.W.2d 722, 730 (Tenn. 1994). In explaining the reasoning, the supreme court stated, "As the Court of Criminal Appeals has correctly observed, '[t]o allow the defendant to evade the reciprocal discovery rule [by making no formal report and claiming that mere 'notes' are undiscoverable] would effectively nullify the meaning of Rule 16(b)(1)(B).'" *Id.*

Based upon Dr. Zager's testimony, the trial court properly concluded that the report was indeed a "draft report" and not a final report. The Defendant's disclosure of the "draft report" to the State did not satisfy the requirements of Tennessee Rule of Criminal Procedure 16. As such, the trial court determined that the interviews, notes from Dr. Zager's evaluations of the Defendant, and medical reports together constituted the most complete evaluation and, therefore, the State was entitled to these documents.

The Defendant waited until shortly before the initial trial date to file notice of an insanity/diminished capacity defense. The trial court continued the trial to allow the State adequate time to review Dr. Zager's report. After unsuccessful attempts to obtain from trial counsel the documents relied upon for Dr. Zager's findings in the draft report, the

State filed a motion to exclude Dr. Zager's testimony. The defense maintained that the State had received all documents in the defense's possession. Dr. Zager then testified that original counsel had provided her with the Christ Community Health Center Services records and that she had given trial counsel her notes from her evaluations of the Defendant and her interviews of the Defendant's family members. Based upon the testimony of Dr. Zager presented by the Defendant, the trial court properly concluded that these documents were "within the defendant's possession, custody, or control," and that the Defendant intended to present Dr. Zager's opinion, which relied upon these documents, in his case-in-chief at trial. T.R.C.P. 16 (b)(1)(B)(i) & (ii).

The trial court found that the State had specifically requested the information and the defense had failed to provide it. The trial court then considered the prejudice to the State and, after finding that the omission effectively prevented the State from an adequate cross-examination, excluded Dr. Zager's testimony. Exclusion of the testimony was a remedy available to the trial court and we cannot conclude that, under these circumstances, the trial court "applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining," in so doing. *Coley*, 32 S.W.3d at 833. The Defendant is not entitled to relief as to this issue.

Because we have concluded that the trial court did not abuse its discretion by excluding the testimony, we do not address the State's assertion that the trial court properly excluded the testimony because it was unreliable pursuant to Tennessee Rule of Evidence 703. As the State correctly notes, this issue was not raised in the motion to exclude Dr. Zager's testimony filed before the Defendant's trial. Consequently, the trial court did not rule on whether Dr. Zager's testimony was unreliable, leaving this court with nothing to review as to the trial court's findings about the reliability of Dr. Zager's testimony.

### B. Motion for a Continuance

The Defendant contends that the trial court committed plain error by failing to grant a continuance after being presented with evidence of the Defendant's lack of competence the day before trial. The State responds that the Defendant has waived this issue for failure to raise it in his motion for new trial and that the Defendant cannot show plain error because he failed to show that he was incompetent at the time of trial.

In order to properly preserve an evidentiary issue for review, a party must raise a timely and specific objection in the trial court either at or before trial. *See* Tenn. R. Evid. 103(a); *State v. Vance*, 596 S.W.3d 229, 253 (Tenn. 2020) (stating that "evidentiary objections not brought to the trial court's attention at the appropriate time will not be considered under plenary review"). In addition to raising a timely and specific objection, a party must raise the issue in a motion for a new trial in order to preserve it for appellate

11

review. *See* Tenn. R. App. P. 3(e) (stating that "in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence . . . unless the same was specifically stated in a motion for a new trial"); *State v. Harbison*, 539 S.W.3d 149, 164 (Tenn. 2018).

In this case, the Defendant did not raise the issue in his motion for new trial, and he has not shown that he is entitled to plain error relief. *See State v. Smith*, 24 S.W.3d 274, 282-83 (Tenn. 2000). Accordingly, the Defendant has waived this issue.

### III. Conclusion

Based upon the foregoing, we affirm the trial court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE